IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HILDA M SUMNER and DANIEL N. STEARNS,
as representatives of the ESTATE OF DANNY
M. FRUITS, and
DANIEL N. STEARNS,

       Plaintiffs,

      v.                                Case No. 07-1187-JTM

CITY OF WINFIELD, KANSAS,
and
MARK KNOLES,

       Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on defendants' motion for summary judgment. (Dkt. No. 27). Hilda Sumner and Daniel N. Stearns as representatives of the Estate of Danny M. Fruits and Daniel N. Stearns in his individual capacity filed suit against the city of Winfield and police officer Mark Knoles. Noles fatally shot Fruits to death, giving rise to plaintiffs' claims that defendants violated Fruits's constitutional rights, asserting three theories of recovery: 1) a section 1983 claim against Knoles in his individual capacity for unreasonable seizure under the Fourth Amendment; 2) a wrongful death claim under K.S.A. 60-1901 and a survival claim under K.S.A. 60-1801 (2005) against Knoles for the fatal shooting of Fruits; and 3) a Kansas Tort Claims Act claim against the city of Winfield, Kansas, for Knoles fatal shooting of Fruits.

Summary Judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56

(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. V. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c) the party opposing summary judgment must do more than show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The following facts are uncontroverted. Knoles, during the relevant time period, was a sergeant with the Winfield Police Department, employed by the city of Winfield. On March 8, 2006, Knoles was on duty. He was driving an unmarked police vehicle and was not in uniform. However,

he was wearing his duty handgun and his belt badge, pager, cell phone, magazine/handcuff carrier attached to his belt, and a portable police radio clipped to his pant pocket. Knoles heard a dispatch call over the police radio that a customer was taking the cash register from the Smoke Shop at 14th and Main in Winfield. Dispatch advised that a white male had taken the cash register and left in a burgundy colored Jeep Cherokee ("Jeep") bearing Kansas tag WOT983.

Lt. Donals, Lt. Gale and officer Dougherty also were Winfield policemen on duty at that time. All were in police uniform and driving marked police cars. Gale was flagged down by some people who yelled that the Jeep went towards the dam. Knoles put the information about the dam over the radio. Donals, Gale, Knoles and Dougherty drove toward the dam. Knoles radioed to dispatch and other officers that the suspect jeep was going to the Tunnel Mill Dam ("Dam"). The Dam area is publicly owned, sitting between the Walnut River and a big levee in Winfield, Kansas. Gale, followed by Dougherty and Donals all drove marked police cars into the Dam area. Knoles got close enough to confirm that the suspect Jeep had tag number WOT983.

The officers executed a felony stop on the suspects (three males) in the Jeep. Knoles did not know if the suspects were armed. Knoles got out of his car and took his gun out. Dougherty said that when he arrived at the Tunnel Mill Dam road and faced the Jeep, the driver immediately got out of the Jeep and began to walk away. Knoles saw that Gale and Donals were handling the driver. Knoles ran toward the back end of the Jeep while Dougherty approached the front end of the Jeep. Knoles and Dougherty were concerned because the front passenger, later identified as Fruits, was moving around in the vehicle. Knoles and Dougherty thought Fruits might be retrieving a weapon. Dougherty said that Fruits failed to obey his commands to show his hands and he (Fruits) looked at him and exhibited mannerisms of visible anger.

Dougherty said that when the front passenger exited the Jeep, he pulled his service revolver because he did not know if the front passenger was armed. Knoles said he believed the front passenger may have had a weapon based on his movements and his failure to show his hands. Dougherty and Knoles had their guns pointed at Fruits. Knoles told Fruits, "We're the police." Knoles said Fruits said "You're gonna have to kill me. I'm not going anywhere." Dougherty said Fruits said "[Y]ou're going to have to shoot me." Knoles saw Fruits get out of the Jeep and officers were yelling for him to get on the ground or get down and he did not comply with the police officers' orders. Knoles saw bulges in both front pockets of Fruits's jeans, and was concerned Fruits might have a weapon.

Knoles pointed his gun at Fruits once Fruits was outside of the Jeep. Dougherty holstered his weapon and began to draw his baton. Knoles believed Dougherty would use his baton to take Fruits to the ground. Fruits had not complied with the officers' verbal commands when Dougherty began to draw his baton. A civilian witness said that he heard the officers telling the front passenger to get on the ground and he never did comply with the commands. (Dkt. No. 28 - Ex. R2 - page 20).

Knoles said Fruits was coming toward him. A civilian witness said that he saw Fruits go toward Knoles before he got shot. (Dkt. No. 28 - Ex. F). Another civilian witness said he saw Fruits all of sudden went toward Knoles and he was walking straight and rushing at Knoles. (Dkt. No. 28 - Ex. R2 - page 22). The witness said Fruits was in motion toward Knoles when the shot went off. (Dkt. No. 28 - Ex. R2 - page 24). Knoles saw Fruits put his hands into his pants pocket. Dougherty saw Fruits put his hands in his pockets and his arm go stiff as if he had found something. Knoles saw Fruits withdraw his hands quickly from his pockets and he saw something in Fruits hand when he yanked his hands out of his pockets. Knoles thought Fruits had a gun in his hand. Knoles fired his

gun once at Fruits and the bullet struck Fruits in the front side of the abdomen. Fruits subsequently died of the gun shot wound. A civilian witness said he could see Fruits' hands immediately prior to the shooting and at the time Fruits was shot he had reached at his waist area and pulled something. (Dkt. No. 28 - Ex. K ). Another civilian witness said that Fruits reached for something and then the officer fired his gun. (Dkt. No. 28 - Ex. L). The Cowley County Attorney exonerated Knoles for the shooting of Fruits and concluded the shooting was justified and in self-defense. (Dkt. No. 28 - Ex. Q).

Plaintiffs first assert a §1983 Fourth Amendment excessive force claim against Knoles. The plaintiffs claim that the shooting of Fruits was an unreasonable seizure in violation of the Fourth Amendment and §1983. Knoles claims that he shot Fruits in self-defense and is entitled to qualified immunity. (Dkt. No. 28). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly establish statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982). In a recent Tenth Circuit case, *Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007), in granting a police officer qualified immunity, the Court emphasized the problem of split second decisions for police officers in the field. "The reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene', recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions. *Id.* at 1204 (citing *Gross v. Pirtle,* 245 F.3d 1151, 1158 (10th Cir. 2001)). The U.S. Supreme Court recently discussed the two step analysis required for a qualified immunity determination in *Scott v. Harris*, 127 S.Ct. 1769 (2007). The "threshold question . . . do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 1774. "If and only if, the

5

court finds a violation of a constitutional right, the next sequential step is to ask whether the right was clearly established." *Id.* at 1774. *Scott* reiterated the 'objective reasonableness' standard'. *Id.* at 1776. "A claim of excessive force in the course of making [a] . . . 'seizure' of [the] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Conner*, 490 U.S. 386, 388 (1989).

The recent case of *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007), is instructive. Mecham was stopped by a state trooper for speeding and failing to use a seat belt. Her out-of-state driver's license was suspended, and she claimed not to have an in-state license, although dispatch had advised the trooper she did. The trooper told her she would have to get someone out to pick up her vehicle or it would be impounded, as she could not drive without a license. Mecham then took a call on her cell phone, although the trooper had directed her to put down the phone while he was talking to her. The trooper then told her he would arrest her unless she cooperated. She did not end her call, and the trooper had dispatch call a tow truck. When Mecham refused to leave her car, the trooper called for backup. A second trooper arrived, and Mecham continued to refuse to leave her car. The first trooper then sprayed her with pepper spray, removed her from the car, put her on the ground, handcuffed her and called for medical assistance. All charges against Mecham ultimately were dropped.

In *Mecham*, the district court had found that there was no fact dispute, but still denied summary judgment. The Tenth Circuit emphasized that the question of objective reasonableness is not for the jury to decide where the material facts are uncontroverted. *Id.* at 1203-04. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them

6

. . . ." *Graham v. Conner*, 490 U.S. 386, 397 (1989). Proper application of the Fourth Amendment reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The court in *Mecham* analyzed the facts before it and found that "[T]he suspect's resistance to arrest and safety concerns [made] the officers conduct in this case reasonable." *Id.* at 1204.

As noted previously, "[e]xcessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). Applying this standard to the case at hand, the officer's actions were objectively reasonable. Fruits told the officers he would not comply with their orders willingly, and, in fact, told them they would have to shoot him. He refused to get on the ground and to show his hands when ordered to do so. His pants pockets were bulging. He placed his hands in his pockets and was quickly removing an unknown item from his pockets while he was advancing toward the officer. The plaintiffs have not raised a genuine issue of material fact regarding the objective reasonableness of Knoles's alleged use of excessive force. The plaintiffs have failed to establish a constitutional violation. Knoles is entitled to qualified immunity.

Turning next to plaintiffs' wrongful death and survival claim, plaintiffs assert that Knoles violated K.S.A. 21-3215(1) by shooting and killing Fruits when deadly force was not necessary to prevent death or great bodily harm to Knoles or another person. Knoles alleges that he shot Fruits in self-defense and is entitled to qualified immunity. (Dkt. No. 28). Knoles also alleges that the fact that he was exonerated from criminal liability for this shooting should bar the plaintiffs' claim.

K.S.A. 21-3215(1) allows the use of deadly force the officer reasonably believes to be necessary to defend the officer or others from death or great bodily harm. *See* K.S.A. § 21-3215(1). This statute applies to officer's criminal liability, but the Kansas Supreme Court has applied it equally to civil liability. *See Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1037 (1983) ("We see no reason why the civil liability of a law enforcement officer should not be coextensive with his or her criminal liability.") The Cowley County Attorney investigated the shooting of Fruits and exonerated Knoles. In *Wilson v. Meeks*, 98 F.3d 1247 (10th Cir. 1996), the District Court on remand considered the defendants' motion for summary judgment on the remaining tort claims. The District Court reviewed Kansas law on self defense and concluded that the plaintiff's assault and battery claims against officer Meeks were precluded by the Tenth Circuit's grant of qualified immunity to officer Meeks on the excessive force claim. The plaintiffs appealed. *Id.* at 1249. The Tenth Circuit stated:

> The district court's disposition of these issues was correct. The court determined the assault and battery claims against Officer Meeks were precluded by our holding his actions were objectively reasonable. It found Kansas' law of self-defense includes a two-part test requiring proof of both subjective belief in the need to defend oneself and objective reasonableness. Thus our conclusion the officer's actions were objectively reasonable in terms of the excessive force claim supported the objective prong, and Officer Meek's testimony he was in fear of Mr. Wilson's firearm met the subjective inquiry.

*Id.* at 1253.

Kansas has codified the principles of self-defense in K.S.A. 21-3211 (1995), which provides: "A person is justified in the use of force against an aggressor when and to the extent it appears to such person and such person reasonably believes that such force is necessary to defend such person or a third person against such other's imminent use of unlawful force." The Kansas Supreme Court has explained the two-prong test that is contemplated by the statute:

8

> The first prong is subjective and requires a showing that the defendant sincerely and honestly believed it necessary to kill to defend himself. The second prong is an objective standard and requires a showing that a reasonable person in the defendant's circumstances would have perceived self-defense as necessary.

*State v. Tyler*, 251 Kan. 616, 625 (1992); *see also State v. Stewart*, 243 Kan. 639, 649 (1988).

Based on K.S.A. 21-3215(1) and the court's determination that Knoles acted reasonably in using deadly force under the circumstances, the court concludes that Knoles was privileged in his use of force against Fruits and therefore is not liable for wrongful death nor a survival claim premised on battery.

Finally, plaintiffs claim that the city of Winfield is liable under the Kansas Tort Claims Act. ("KTCA"). The plaintiffs claim that Knoles was an employee of Winfield and was acting within the scope of his employment when he shot and killed Fruits. The city of Winfield alleges that it is not liable because as a governmental entity it is exempt and not liable for damages pursuant to K.S.A. 75-6104. Among other exceptions, KTCA provides immunity from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(e). Courts construing this discretionary function exception and its common law source have generally held that a law enforcement officer who uses an unreasonable amount of force or acts maliciously or wantonly will not be protected by the exception. *Hopkins v. State,* 237 Kan. 601, 611 (1985); *Bradford v. Mahan,* 219 Kan. 450, 454 (1976). *See also Robertson v. City of Topeka,* 231 Kan. 358, 364, 644 P.2d 458, 463 (1982)(Fromme, J., dissenting)(stating that in passing the KTCA, the legislature had no intention of changing the common law immunity for police officers). Accordingly, if an officer does

9

not act unreasonably, he or she is entitled to the immunity provided by the Act. *See Dauffenbach,* 233 Kan. at 1034 (stating that an officer generally has the right to use reasonable force).

The court has already found that Knoles acted reasonably in this situation. If Knoles's actions were discretionary, then the city of Winfield is entitled to immunity under the discretionary function exception. In *Sevier v. City of Lawrence,* the Tenth Circuit granted the defendants' summary judgement motion regarding the plaintiffs' wrongful death claim premised on negligence, finding the defendants were entitled to immunity under the discretionary function exception in K.S.A. 75-6104(e). 853 F.Supp. 1360, 1370 (D.Kan. 1994). The court held that the discretionary function exception applied in that case because there was no clearly defined policy governing the officer's actions. *Id.* There was not a mandatory policy governing Knoles's actions leading up to the use of force. The Winfield Police Department submitted its deadly force policy. The policy states that "an officer *may* discharge his firearm . . . ." (Dkt. No. 28 - Ex. Aa - page 21-22)(emphasis added). Accordingly, the court finds that Knoles's actions were discretionary with regard to the events in this case. *See Sevier,* 853 F.Supp. at 1370. Therefore, the City of Winfield is entitled to immunity under K.S.A. 75-6104(e).

It is accordingly ordered this 30th day of March, 2009, that defendants' motion for summary judgment (Dkt. No. 27) is granted.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE